**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHNNY WILDS,                                    Case No. 1:22-cv-508
      Petitioner,

                                     Cole, J.
    vs.                                          Litkovitz, M.J.

WARDEN, CHILLICOTHE                              **REPORT AND**
CORRECTIONAL INSTITUTION,                        **RECOMMENDATION**
      Respondent.


Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, has filed

a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before

the Court on the petition, respondent's return of writ, and petitioner's reply.  (Doc. 1, 14, 15).

For the reasons stated below, the petition should be denied.

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's

convictions and sentence:[1]

> {¶2} The state alleged that on May 22, 2019, Wilds engaged in (1) trafficking in
> heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(f), a first-degree felony; (2)
> possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(e), a first-degree
> felony; (3) trafficking in a fentanyl-related compound in violation of R.C.
> 2925.03(A)(2) and (C)(9)(g), a first-degree felony; (4) possession of a fentanyl-
> related compound in violation of R.C. 2925.11(A) and (C)(11)(f), a first-degree
> felony; and (5) illegal conveyance of drugs of abuse onto grounds of a specified
> governmental facility in violation of R.C. 2921.36(A)(2) and (G)(2), a third-degree
> felony.  Counts One through Four contained specifications that sought to confiscate
> $751 from Wilds as contraband.
>
> {¶3} Wilds' trial began on September 9, 2019.  Immediately prior to the beginning

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

of trial, the state moved to dismiss Count Five, which the court granted. The state presented five witnesses. Wilds was the sole witness for the defense.

{¶4} Ohio State Trooper Nick Lewis testified for the state. Lewis was part of the criminal interdiction team working in the southeastern part of Ohio to stop drug trafficking, among other offenses. He was familiar with Wilds from a prior traffic stop. On May 22, 2019, Lewis received an anonymous tip that Wilds was returning from Dayton to Portsmouth with heroin and would go through Hillsboro, Ohio by way of route 73 or route 104. Detective Metzler from the Southern Ohio Drug Task Force contacted Lewis and informed him that he (Metzler) and Detective Ervin were also looking for Wilds. Lewis positioned himself at the route 73/104 split near Hillsboro to watch for Wilds at approximately 6 p.m. While watching for Wilds, Deputy Akers pulled up to Lewis' cruiser and the two began to chat. Lewis informed Akers about the tip regarding Wilds transporting heroin. Shortly thereafter, Lewis noticed a green Mustang pass by that he thought was being driven by Wilds, to which Akers concurred. Akers was relatively new to interdiction, so he asked Lewis if he could follow Wilds and Lewis agreed.

{¶5} Deputy Akers testified that he followed Wilds and noticed the Mustang went left of center twice within a few blocks, so he executed a traffic stop. Akers stated that Wilds identified his passenger as Jennifer King and further informed him that his license was not valid. Akers asked Wilds to step out of the car. After Wilds was out of the car, Trooper Lewis arrived at the scene. Akers explained that because King had an outstanding warrant, they arrested her and placed her in Lewis' cruiser. Akers asked Wilds if there were any weapons or drugs in the Mustang, and Wilds answered in the negative. Akers testified that Wilds consented to a search of the Mustang. Lewis discovered what they suspected was heroin in a fake peanut butter jar inside the Mustang. Akers then called the drug task force unit, which collected the evidence.

{¶6} Detective Metzler from the Portsmouth Police Department also joined Akers and Lewis at the traffic stop. Metzler testified that when he arrived, Lewis had already discovered the drugs. Metzler identified the plastic bag that Lewis had recovered from the Mustang that contained what they believed was heroin, and Wilds' cell phone. Metzler used a "Cellbrite machine" that identified outgoing and incoming calls and text messages from Wilds' phone. Metzler read a number of the texts produced by the machine. One incoming text to Wilds' phone from 614-639-4476 stated: "I fucked myself. Spent a 140 for a buddy, all gone on just ride home, had one left when I got * * * still sick, which is a bunch of bullshit." A subsequent text from that same number to Wilds stated: "Will you please help us? I'll for sure have a paycheck late Wednesday night and she is going to grab 2 30's each night. She goes back tomorrow." Metzler explained to the jury that "sick" means the person is wanting to use drugs, and "30's" means "oxycontin." Wilds responded to the 4476 number with the following text: "I can't front any, don't have much left."

{¶7}  The state further called Lynn Strainic, an analyst employed by the Ohio Bureau of Criminal Investigation, to testify.  Strainic explained that she tested the substance recovered by Trooper Lewis from the Mustang, which was 83.97 grams of powder that contained heroin and fentanyl.

{¶8}  Wilds testified that he is a drug user, but not a drug trafficker.  He explained that on the night of the traffic stop he did not go to the Jeffersonville Outlet Mall to buy drugs to bring back to Scioto County.  He stated that he went to the mall so that Jennifer King could buy some clothes.  He borrowed the Mustang from Ralph Hayslip to get to the mall.  Wilds further stated that the powder containing the heroin-fentanyl mixture was in the Mustang when he borrowed it from Hayslip.

(Doc. 13, Ex. 8 at PageID 116-118).

## II.  PROCEDURAL BACKGROUND

### State Trial Proceeding

On June 19, 2019, the Scioto County, Ohio grand jury returned a five-count indictment, charging petitioner with trafficking in heroin, possession of heroin, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, and illegal conveyance of drugs of abuse onto grounds of a specified government facility.  (Doc. 13, Ex. 1).  Petitioner entered a plea of not guilty.  (*See* Doc. 13, Ex. 2).

Following a jury trial, petitioner was found guilty of trafficking of heroin, possession of heroin, trafficking of a fentanyl-related compound, and possession of a fentanyl-related compound.  (Doc. 13, Ex. 3).  The remaining illegal conveyance of drugs of abuse onto grounds of a specified government facility count was dismissed by agreement of the parties.  (*See* Doc. 13, Ex. 4 at PageID 73).

On September 18, 2019, petitioner was sentenced to a total aggregate mandatory minimum prison term of twenty years to an indefinite maximum prison term of up to twenty-five and one half years in the Ohio Department of Rehabilitation and Correction.  (*Id.*).

3

**Direct Appeal**

Petitioner filed a notice of appeal to the Ohio Court of Appeals.  (Doc. 13, Ex. 5).

Petitioner, through different counsel than at trial, raised the following single assignment of error

in his appellate brief:

> ASSIGNMENT OF ERROR ONE: Trial counsel rendered ineffective assistance by
> failing to file a motion to suppress in violation of Defendant-Appellant's rights
> under the Fifth, Sixth and Fourteenth Amendments to the United States
> Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.
>
> Issue One. Where the state's evidence is obtained from a traffic stop, it is
> unreasonable under prevailing professional norms to fail to file a motion to
> suppress.  Herein, counsel did not file a motion to suppress the evidence found in
> the vehicle Defendant-Appellant was driving after he was stopped for going left of
> center.  Exclusion of the drugs from trial would have required dismissal of the case.
> Trial counsel provided constitutionally deficient performance.
>
> Issue Two. The constitutionality of a traffic stop cannot be litigated at trial.  Herein,
> trial counsel did not file a motion to suppress evidence seeking exclusion of the
> drugs and cellphone, but rather attempted to litigate the constitutionality of a traffic
> stop at trial.  He was properly foreclosed from such by the trial court, after Plaintiff-
> Appellee's objection.  Trial counsel's deficient performance provides a reasonable
> probability sufficient to undermine confidence in the outcome of the proceedings,
> i.e. prejudice.

(Doc. 13, Ex. 6 at PageID 85).  On July 20, 2021, the Ohio Court of Appeals overruled

petitioner's assignment of error and affirmed the judgement of the trial court.  (Doc. 13, Ex. 8).

**Ohio Supreme Court**

Petitioner, proceeding without the assistance of counsel, filed a timely notice of appeal to

the Ohio Supreme Court.  (Doc. 13, Ex. 9).  In his memorandum in support of jurisdiction,

petitioner raised the same assignment of error raised on direct appeal as a proposition of law.

(*See* Doc. 13, Ex. 10 at PageID 133).  On November 24, 2021, the Ohio Supreme Court declined

to accept jurisdiction over the appeal.  (Doc. 13, Ex. 11).

4

**Federal Habeas Corpus**

Petitioner initiated the instant federal habeas corpus action on August 30, 2022.  (*See*

Doc. 1).  Petitioner raises the following single ground for relief in the petition:

> **GROUND ONE**:  Trial Counsel rendered ineffective assistance of counsel by failing to file a motion to suppress in violation of defendant appellant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.

(Doc. 1, Petition at PageID 7).  He realleges the same two "issues" raised before the Ohio

Court of Appeals.

Respondent has filed a return of writ in opposition to the petition, to which petitioner has

replied.  (Doc. 14, 15).  According to respondent, petitioner's ground for relief is without merit.

## III.  THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication

of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d).

Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

5

*Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170, 181-82], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

6

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v.*

*Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that

provision, the state prisoner must show that the state court ruling on the claim presented "was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that

controlled at the time of the last state-court adjudication on the merits, as opposed to when the

conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte,* 654 F.3d at

600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim

addressed by the state courts, the federal habeas court must "look to Supreme Court cases

already decided at the time the state court made its decision"). In *Greene*, 565 U.S. at 38, the

Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179
> L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was
> before the state court that adjudicated the prisoner's claim on the merits. We said
> that the provision's "backward-looking language requires an examination of the
> state-court decision at the time it was made." *Id.*, at 182, 131 S.Ct. at 1398. The
> reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1)
> requires federal courts to "focu[s] on what a state court knew and did," and to
> measure state-court decisions *as of 'the time the state court renders its decision*.'"
> *Id.*, at 182, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . .
> .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right

had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v.*

*Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of

7

clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed

to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision."

*McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Ground One is without merit.

In Ground One of the petition—petitioner's sole ground for relief—petitioner claims that

trial counsel rendered ineffective assistance by failing to file a motion to suppress challenging his

traffic stop. (*See* Doc. 1, Petition at PageID 7). Petitioner raised his ground for relief as an

assignment of error on direct appeal. Addressing the merits of petitioner's claim, the Ohio Court

of Appeals overruled the assignment of error, reasoning as follows:

> {¶10} Wilds cites *State v. Turner,* —— Ohio St.3d ——, 2020-Ohio-6773, —— N.E.3d ——, 2020 WL 7501936 for the proposition that "touching a white 'fog line'" is insufficient to establish reasonable articulable suspicion to support a traffic stop. Wilds then restates the "defense's theory of the case" as set out in his trial counsel's opening argument that claimed Deputy Akers fabricated the traffic violation to stop Defendant-Wilds as there was intel that that he would be carrying back heroin from the Dayton area. This is clear he said from the lack of a video as there was no cruiser cam on the deputy's cruiser. The trooper cruiser, on the other hand, had a cruiser cam and the fabricated stop would have been revealed by the recording had he been the one to stop the Mustang. Plus, it was the trooper who received the tip from his dispatcher so why did he not make the stop?

> {¶11} Wilds claims that his trial counsel attempted to argue the constitutionality of the traffic stop to the jury in hopes that the jury would "nullify" the state's evidence, as opposed to properly raising the validity of the traffic stop in a pre-trial motion to suppress. Wilds argues that Deputy Akers did not testify to any "facts" to justify the traffic stop, but instead stated a "legal conclusion" that Wilds drove the Mustang "left of center." Finally, Wilds speculates that had trial counsel argued the validity of the traffic stop in a pre-trial motion, coupled with the fact that Akers' cruiser had no dash cam and Akers statement that they wanted to "interdict" Wilds, the trial court would have suppressed the drugs discovered in the Mustang. Therefore, Wilds contends his trial counsel's representation was deficient by not filing a motion to suppress the evidence and that failure prejudiced him. Consequently, Wilds asks this court to reverse his convictions, and remand for a new trial.

> {¶12} In response, the state argues that merely failing to file a motion to suppress does not necessarily equate to ineffective assistance of counsel. The state claims that *Turner* is not applicable to the traffic stop herein because Wilds crossed the

center line, not the fog line.  The state asserts that crossing the center line is probable cause for a traffic stop.  Thus, the state maintains that Wilds' trial counsel had no basis to support a motion to suppress.  Consequently, the state argues, Wilds' trial counsel's representation was not deficient and this Court should overrule his assignment of error and affirm Wilds' convictions.

Law and Analysis

{¶13} "The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense." *State v. Purvis-Mitchell*, 4th Dist. Washington No. 17CA30, 2018-Ohio-4032, ¶ 51.  "To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his or her counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him or her of a fair trial." *State v. Howard*, 4th Dist. Ross No. 18CA3666, 2019-Ohio-5419, ¶ 51, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

*Id*., quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95.  "Failure to establish either element [— deficient performance or prejudice —] is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶14} In determining whether a trial counsel's representation of a defendant was deficient, "'a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Anderson*, 4th Dist. Lawrence No. 17CA6, 2018-Ohio-2013, ¶ 25, quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  "'Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se.  To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question.'" *State v. Williams*, 4th Dist. Scioto No. 10CA3381, 2012-Ohio-6083, ¶ 15, quoting *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65.  "'"Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion."'" *State v. Bradford*, 4th Dist. Adams No. 20CA1109, 2020-Ohio-4563, quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist. 1980).

{¶15} "Claims of ineffective assistance are rejected when counsel's failure to file a suppression motion * * * [has] no reasonable probability of success." *State v. White*, 4th Dist. Washington No. 17CA10, 2018-Ohio-18, ¶ 39, citing *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001). "We must presume that trial counsel was effective if counsel 'could have reasonably decided that filing a suppression motion would be a futile act, even if there is some evidence to support a motion.'" *Id*., quoting *State v. Walters*, 4th Dist. Adams No. 12CA949, 2013–Ohio–772, ¶ 20.

{¶16} In asserting that his trial counsel's performance was deficient by not filing a motion to suppress, Wilds correctly claims that a law enforcement officer must have at least a "reasonable articulable suspicion" that a driver has committed "a crime, including a minor traffic violation" to execute a constitutionally-valid traffic stop. *State v. Bennett*, 4th Dist. Pickaway No. 20CA4, 2021-Ohio-937, ¶ 13, quoting *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 12; accord *State v. Mays*, 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 (Either a reasonable articulable suspicion, or the more stringent probable cause, that a defendant has committed a crime is required to support a valid traffic stop).

{¶17} Wilds cites the Supreme Court's decision in *Turner*, which held that a police officer does not have a reasonable articulable suspicion to execute a traffic stop when the officer observes a vehicle "'driving on', or 'touching'" the "fog line," which is the single white line that marks the right-side of a roadway. 2020-Ohio-6773, ¶ 3. Unlike in *Turner*, which is limited to a marked lane violation under R.C. 4511.33(A)(1) pertaining to driving on or touching the fog line, the traffic stop herein occurred because Wilds drove left of center. Thus, Turner is not applicable to the traffic stop herein.

{¶18} Courts in Ohio, including this one, have recognized that a police officer has probable cause to execute a traffic stop, if he or she observes a vehicle crossing the centerline of a road in violation of R.C. 4511.25(A), which requires vehicles to drive on the right side of the road. *See State v. Guesman*, 4th Dist. Athens No. 08CA15, 2009-Ohio-952, ¶ 17-24, *State v. Schmehl*, 3rd Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 9 ("Because driving left of center is a traffic violation, an officer who witnesses a driver violating R.C. 4511.25(A) would be justified in effectuating a traffic stop." (footnote omitted)), and *State v. Annis*, 11th Dist. Portage No. 2001-P-0151, 2002-Ohio-5866, ¶ 27, citing *Madison Twp. v. Moore*, 11th Dist. Lake No. 99-L-096, 2000WL 688790, *3 (May 26, 2000) ("This court has held that a vehicle that crossed over the double-yellow lane divider lines with both driver's side tires twice constituted a violation of R.C. 4511.25, driving left of center; therefore, giving the officer probable cause to initiate a traffic stop."). Contrary to Wilds' argument, Akers did testify to facts that supported a violation of R.C. 4511.25(A), i.e., he stated that he observed the Mustang driven by Wilds go left of center, twice.

{¶19} Wilds also challenges Deputy Akers and Trooper Lewis' credibility, claiming they conspired to stop him regardless of whether he violated the law. Wilds' claim is based on the decision for Akers to follow him as opposed to Lewis, since Akers did not have a dash camera in his cruiser.  But Lewis testified that Akers requested to follow Wilds because he was new to interdiction and wanted the experience.  Aside from Wilds' speculation, there is simply no evidence that Akers and Lewis conspired to have Akers follow Wilds because it would be easier for him to "fabricate" a traffic stop.  Even though the credibility of Lewis and Akers could be construed as "some evidence" upon which Wild's trial counsel could have filed a motion to suppress, [Wilds] cannot demonstrate that the trial court would have found them not credible and suppressed the evidence.  *See State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 12 ("Here, the court found that the trooper observed Appellant travel outside of marked lanes.  Competent, credible evidence in the form of the trooper's testimony from the suppression hearing supports this finding, despite the fact that this violation was not caught on the video.")

{¶20} [Wilds] thus cannot overcome the presumption that his counsel "could have reasonably decided that filing a suppression motion [based on a speculative conspiracy theory] would have been a futile act."  *Walters*, 4th Dist. Adams No. 12CA949, 2013–Ohio–772, ¶ 20.  Accordingly, because there is no reasonable probability that a motion to suppress would have succeeded, we overrule Wilds' assignment of error alleging that his trial counsel was ineffective.

(Doc. 13, Ex. 8 at PageID 119-24).[2]

Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or involved an unreasonable application of Supreme Court precedent.  As observed by the Ohio appeals court, to establish ineffective assistance of counsel, petitioner must demonstrate both that (1) his trial attorney's conduct was constitutionally deficient; and (2) counsel's deficient performance prejudiced the defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the

---

[2] As noted by respondent, paragraphs 19 and 20 of the opinion appear to have used the name of the detective Akers instead of petitioner Wilds.  The apparent typographical errors have been corrected to avoid confusion.

wide range of reasonable professional assistance. *Id.* at 689. Under the second "prejudice"

prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists

that, but for counsel's errors, the outcome of the trial would have been different. *See id.* at 694.

Petitioner has met his burden if he shows that the result of the trial would "reasonably likely

have been different absent the errors." *Id.* at 695. The Court need not examine the question of

whether counsel's performance was deficient before addressing the question of whether

petitioner was prejudiced by the challenged conduct. The Court may dispose of an ineffective

assistance of counsel claim by finding that petitioner has made an insufficient showing on either

ground. *Id*. at 697.

In this case, as he argued on direct appeal, petitioner claims that trial counsel was

ineffective for failing to file a motion to suppress to challenge his traffic stop as being

unconstitutional. According to petitioner, counsel should have argued that officer Akers did not

have reasonable suspicion to initiate the traffic stop leading to his arrest and search of his

vehicle. Petitioner relies (*see* Doc. 1 at PageID 3, 16) on the Ohio Supreme Court decision in

*State v. Turner*, 170 N.E.3d 842, 843 (Ohio 2020), which considered the certified question of

whether an officer has a "reasonable and articulable suspicion to conduct a traffic stop of a motor

vehicle for a marked lanes violation under R.C. 4511.33(A)(1) when the officer observes the

tires of a vehicle driving on, but not across a marked lane line?" *Turner*, 170 N.E.3d at 843

(citation omitted). Answering the question in the negative, the Ohio Supreme Court held that

driving on or touching the fog line—"the single solid white longitudinal line on the right-hand

edge of a roadway"—was not a violation of Ohio Rev. Code § 4511.33(A)(1). *Turner*, 170

N.E.3d at 843 (Ohio 2020) ("the single solid white longitudinal line on the right-hand edge of a

roadway—the fog line—merely discourages or prohibits a driver from crossing it; it does not prohibit driving on or touching it") (internal quotation marks and citation omitted).

The Ohio Court of Appeals reasonably distinguished *Turner* from petitioner's case, noting that reasonable suspicion was established by Akers' testimony that he observed petitioner drive left of the center line on two occasions before initiating the traffic stop. (*See* Doc. 13, Ex. 8 at PageID 117.  *See also* Doc. 13, Ex. 6 at PageID 93; Ex. 7 at PageID 111).  Unlike in *Turner*, where the defendant drove on or touched the fog line, the Ohio courts have found that crossing over the center line constitutes a traffic violation under Ohio law and provides a lawful basis for a traffic stop.  *See State v. Oliver*, 214 N.E.3d 624, 643-44 (Ohio App. Ct. May 9, 2023) ("We have recognized that, generally, crossing the double-yellow lines is a violation of R.C. 4511.33(A)(1). . . .  And other Ohio courts have generally held that an officer has reasonable and articulable suspicion to stop a driver when an officer observes a vehicle's driver's side tires completely cross the double solid yellow centerline to the point that the tires were not touching the lines.") (collecting cases); *State v. Schmehl*, No. 2-05-33, 2006 WL 587344, at *3 (Ohio App. Ct. Mar. 13, 2006) ("Because driving left of center is a traffic violation, an officer who witnesses a driver violating R.C. 4511.25(A) [which requires that vehicles be driven on the right half of the roadway] would be justified in effectuating a traffic stop.").  *See also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("it is not the province of the federal habeas court to reexamine state-court determinations of state-law questions.");  *Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp. 2d 466, 478 (S.D. Ohio 2011) ("[B]ecause the state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters.").

Finding *Turner* distinguishable from petitioner's case and that petitioner's crossing over the center line on two occasions provided a lawful basis for the stop, the Ohio Court of Appeals reasonably determined that petitioner was not prejudiced by trial counsel's failure to file a motion to suppress. In other words, petitioner has failed to demonstrate the Ohio appeals court's decision finding "no reasonable probability that a motion to suppress would have succeeded" was objectively unreasonable and petitioner's ineffective assistance of counsel claim is without merit.

Petitioner also argues here, as in the state court, that trial counsel's decision to not file a motion to suppress—instead raising the issue at trial—itself demonstrated the ineffective assistance of counsel. (*See* Doc. 1 at PageID 4, 7). Even assuming in petitioner's favor that counsel's assistance was constitutionally deficient, petitioner has again failed to demonstrate he was prejudiced. *Strickland*, 466 U.S. at 694-95. Petitioner fails to set forth any basis to suggest that he would have been successful had counsel filed a motion to suppress. The undersigned agrees with the Ohio Court of Appeals' determination that petitioner's speculative claim that the arresting officers conspired to fabricate a justification for the traffic stop is insufficient to demonstrate a reasonable probability that the evidence would have been suppressed. The same is true of petitioner's conclusory allegations that counsel was ineffective for failing to subpoena the informant, obtain dash cam footage of the incident, or test the peanut butter jar containing the drugs underlying petitioner's convictions for DNA. (Doc. 1 at PageID 16). *See Koras v. Robinson*, 123 F. App'x 207, 212 (6th Cir. Feb. 15, 2005) ("Where one is left with pure speculation on whether the outcome of the trial . . . could have been any different, there is an insufficient showing of prejudice.") (internal citation and quotation marks omitted). Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was objectively unreasonable.

14

Because petitioner has failed to demonstrate that the Ohio appeals court's adjudication of his claim was contrary to or involved and unreasonable application of Supreme Court precedent, petitioner is not entitled to federal habeas relief based on Ground One of the petition, his sole ground for relief.

### B. Stay and Abeyance

Finally, in his reply to the return of writ, petitioner claims that he wishes to stay this action in order to exhaust several claims that are not raised in the petition. Specifically, petitioner appears to raise a new sufficiency of evidence claim with respect to his trafficking in heroin conviction, as well as the following claims: "a [Brady], also 6th Amendment right to call witnesses, that was never call[ed] by this defendants attorney." (Doc. 15 at PageID 194).

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect the constitutional rights of criminal defendants and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). Under the "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review in the Ohio Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99–100 (6th Cir. 1985).

15

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

The 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) "preserve[s] *Lundy*'s total exhaustion requirement" and "impose[s] a one-year statute of limitations on the filing of federal habeas petitions. *Rhines v. Weber,* 544 U.S. 269, 275 (2005). Some federal courts (including the Sixth Circuit) have adopted a "stay-and-abeyance" procedure to ensure habeas review is not precluded in the class of cases where a timely-filed federal habeas petition is dismissed on exhaustion grounds and the petitioner subsequently returns to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims are barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778–81 (6th Cir. 2002).

In *Rhines,* 544 U.S. at 276, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." The Court pointed out that one of AEDPA's purposes

16

is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276–77 (quoting *Lundy,* 455 U.S. at 520).

> The Supreme Court went on to determine that:
>
> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Supreme Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277–78. On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

17

A stay in this case is not warranted for several reasons.  First, this is not a mixed petition containing both exhausted and unexhausted claims.  As noted above, the petition before the Court includes only one ground for relief which has been exhausted and addressed on the merits. *See, e.g.*, *Carver v. Warden*, No. 1:22-cv-132, 2022 WL 5107140, at *2 (S.D. Ohio Oct. 5, 2022) (finding a stay unwarranted where the petitioner raised only exhausted claims); *Worley v. Bracy*, No. 1:18-cv-50, 2018 WL 4443137, at *2 (N.D. Ohio July 11, 2018) ("Where a petitioner presents a petition containing only exhausted claims, courts have held that the stay and abeyance procedure is not available.") (Report and Recommendation), *adopted* 2018 WL 4442195 (N.D. Ohio Sept. 17, 2018).  Second, even if the Court construed the petition as being mixed based on petitioner raising new, unexhausted claims in his traverse, petitioner has failed to demonstrate that a stay is warranted.  Petitioner has not clearly specified the claims he seeks to exhaust in the state courts or what avenue of relief he wishes to pursue.  (*See* Doc. 15 at PageID 194). Therefore, the Court cannot determine if the potential claims meet the requirement that they are not "plainly meritless."  *See Rhines*, 544 U.S. at 277.  Finally, petitioner fails to make any showing regarding his failure to raise the additional claims in the state courts prior to filing the instant federal habeas corpus petition.  *Id.* ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.").  Petitioner's request that this matter be stayed should be denied.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief.  Having found that petitioner's single ground for relief is without merit the petition should be **DENIED** with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: 5/21/2024

Karen L. Litkovitz
United States Magistrate Judge