## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JOHNNY WILDS,**

      **Petitioner,**

    **v.**

**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

     **Respondent.**

**Case No. 1:22-cv-508**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

### OPINION AND ORDER

Before the Court is Magistrate Judge Litkovitz's May 21, 2024, Report and Recommendation (R&R, Doc. 16), which recommends that the Court (1) deny Petitioner Johnny Wilds' request for the Court to stay and to hold in abeyance his federal habeas proceedings to permit him to exhaust several newly raised claims, as well as (2) deny his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) with prejudice. As explained more fully below, the Court **ADOPTS** the R&R's ultimate recommendations, although for slightly different reasons. As a result, the Court **DENIES** Wilds' request in his traverse for a stay and abeyance (Doc. 15) and **DENIES** his Petition (Doc. 1) **WITH PREJUDICE**.

### BACKGROUND

Wilds is an inmate in state custody at Chillicothe Correctional Institution. He is serving a total aggregate indefinite sentence of 20 to 25.5 years after being found guilty of several state drug crimes. (Doc. 13, #73). The underlying indictment charged Wilds with trafficking and possessing heroin, trafficking and possessing a fentanyl-

related compound, and illegal conveyance of drugs of abuse onto grounds of a specified governmental facility. (*Id.* at #57–59). On September 10, 2019, after a jury trial, the state court entered a judgment of conviction against Wilds on all but the illegal conveyance count—the latter was dismissed on agreement of the parties. (*Id.* at #73).

All counts stemmed from a single traffic stop executed on May 22, 2019. S*tate v. Wilds*, 2021-Ohio-2554, ¶¶ 2–5 (4th Dist.). Sheriff Deputy Akers,[1] a relatively new officer who tailed Wilds on suspicion of trafficking in heroin and who sought to gain experience in drug interdiction, pulled Wilds over after observing Wilds' vehicle drive left of center twice. *Id.* ¶ 4. During the ensuing interaction, Akers instructed Wilds to step out of the car and obtained the latter's consent to search the vehicle. *Id.* ¶ 5. The search revealed a fake peanut butter jar filled with what turned out to be 83.97 grams of a powder containing both heroin and fentanyl. *Id.* ¶¶ 5, 7. Officers (by then two other law enforcement personnel had arrived at the scene) arrested Wilds. At the ensuing trial, the three officers involved in the traffic stop and resulting search testified, as well as the laboratory analyst who tested the powder and determined that it contained controlled substances. *Id.* ¶¶ 4–7. Wilds took the stand in his own defense. He testified that he merely *used* drugs (did not sell them) and that someone else owned the vehicle he was driving (and also owned the drugs discovered in that vehicle). *Id.* ¶ 8. Unpersuaded, the jury convicted Wilds on all counts. *Id.* ¶ 9.

Wilds (represented by new counsel) appealed raising one claim of error: that his trial counsel's failure to move to suppress the evidence obtained during the traffic

---

[1] Akers' first name is not listed anywhere in the records filed with the Court or provided in the opinion of the Ohio Court of Appeals for the Fourth District.

stop constituted ineffective assistance. *Id.* ¶ 1. According to Wilds, such a motion would have succeeded because (1) the Ohio Supreme Court has held that troopers lack reasonable suspicion to effect a traffic stop if they observe a suspect touch the white fog line; and (2) the asserted basis for the stop was fabricated given Akers, who carried out the stop, lacked a dash camera, while Ohio State Trooper Nick Lewis, who first received the tip about Wilds' suspected drug trafficking and who arrived after Wilds had been stopped, had one in his car. *Id.* ¶¶ 10–11. The Ohio Court of Appeals for the Fourth District rejected Wilds' arguments and affirmed his convictions. *Id.* ¶ 21. The Ohio Supreme Court declined to accept jurisdiction over his appeal on November 24, 2021. (Doc. 13, #163). He did not seek review in the United States Supreme Court.

On August 30, 2022, Wilds timely filed his § 2254 petition for habeas relief. (Doc. 1). His petition is not the model of clarity. For example, he expressly set forth only a single ground for relief, an ineffective-assistance-of-counsel (IAC) claim (Doc. 1-3, #7), which he claims he exhausted in state court (*id.*, #8, *see also id.*, #4 (identifying the IAC claim that he raised on direct appeal)). But that is not the whole story. For the first time, he also identified three new bases for claiming his trial counsel was ineffective: claiming his trial counsel should have: (1) subpoenaed the informant who provided the tip that Wilds was traveling with drugs; (2) obtained Lewis's dash camera footage; and (3) requested that the state collect DNA from the

3

peanut butter jar.[2] (*Id.* at #16). Beyond that, Wilds also appears to assert, again for the first time, that his Confrontation Clause rights were violated because the informant did not testify at his trial.[3] (*Id.*).

The state filed its Return of Writ addressing only Wilds' exhausted IAC claim and contending that it lacks merit. (Doc. 14). Wilds' Traverse Brief did not respond to any of the state's arguments. Instead, he requested the Court stay and hold in abeyance his federal habeas proceedings to permit him to exhaust before the state courts what appears to be his new contentions regarding the alleged ineffective assistance of trial counsel raised in his Petition. (Doc. 15, #194). Wilds also ambiguously references *Brady v. Maryland* and his Sixth Amendment right to call witnesses in his defense, which suggests he may (also or instead) be seeking the stay to allow him to exhaust his Confrontation Clause claim. (*Id.*).

In any event, on May 21, 2024, the Magistrate Judge issued the R&R. (Doc. 16). The R&R first recommended denying the petition because the sole exhausted claim (the IAC claim predicated on the failure to move to suppress certain evidence) lacked merit when reviewed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). (*Id.* at #203–10). And then it separately recommended denying

---

[2] As these claims would require demonstrating *what* such evidence if obtained would prove, they would require Wilds to present evidence outside the trial record, or *dehors* the record as Ohio law refers to it. Accordingly, under Ohio law, he could not have raised these claims on his direct appeal and would instead need to raise them in a state postconviction proceeding. *Cowans v. Bagley*, 236 F. Supp. 2d 841, 855 (S.D. Ohio 2002).

[3] The Court says "appears to assert" because it is not entirely clear whether Wilds is raising the Confrontation Clause issue as a separate claim, or in further explanation of why his counsel was ineffective. To the extent it is the former, though, the Court observes that as this Confrontation Clause claim could have been reviewed based on the face of the record, Wilds should have raised it in his direct appeal in state court. *Cowans*, 236 F. Supp. 2d at 855.

Wilds' belated request for a stay to permit him to exhaust his other claims. (*Id.* at #213). The R&R reached this latter conclusion for two reasons: (1) because Wilds' Petition did not contain both exhausted and unexhausted claims (which the Court concludes is incorrect as discussed below), the caselaw addressing when to grant a stay in so-called mixed petition cases did not apply; and (2) even if it were a mixed petition, Wilds provided no explanation that would enable the Court to evaluate whether a stay is warranted. (*Id.*). And finally, the R&R recommended denying Wilds a certificate of appealability. (*Id.* at #214). Wilds did not object. The matter is now ripe for review.

## LEGAL STANDARD

As Wilds is proceeding pro se, his pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

The R&R advised Wilds that failing to object within 14 days of its issuance could result in a forfeiture of his right to the Court's de novo review of the R&R as well as his right to appeal this decision. (Doc. 16, #214–15). *Thomas v. Arn*, 474 U.S.

5

140, 152–53 (1985); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting the "fail[ure] to file an[y] objection[s] to the magistrate judge's R&R … [constitutes a] forfeiture" of such objections); 28 U.S.C. § 636(b)(1). Accordingly, Wilds needed to object by June 4, 2024. The time for filing objections has since passed, and, as noted, no party has objected. That said, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that, even when no party objects, the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

Beyond that, another set of constraints also comes into play. Wilds seeks a writ of habeas corpus, which constitutes a collateral proceeding in which the Court reviews a state court judgment and the underlying state court decisions supporting that judgment. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits the Court's review of such petitions in several ways.

First, AEDPA serves as a gatekeeper by requiring a petitioner to exhaust his substantive claims in the courts of the state in which he is confined. 28 U.S.C. § 2254(b)(1). Beyond AEDPA's textual exhaustion requirement, the Supreme Court has found that the comity principles undergirding the exhaustion rule—allowing a state court to address the merits of a constitutional claim "in the first instance"—also require a federal court to dismiss claims that are technically exhausted (in the sense that there is no further available avenue for state court review), but that a state court rejected because the petitioner failed to follow a state procedural rule or that the court

6

did not adjudicate (and would not adjudicate now on procedural grounds) because the petitioner never raised it. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017) (citation omitted); *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006). A petitioner is said to have "procedurally defaulted" such claims. *See Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). And the existence of the adequate and independent state ground (e.g., a state's procedural rule against hearing untimely claims) for denying the petitioner's claim generally prevents federal review of it. *Id.* at 732. That said, the procedural default doctrine is not an inexorable rule. A federal court may adjudicate a procedurally defaulted claim if the petitioner shows both "cause for the default and prejudice from a violation of federal law." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012).

Second, even as to those claims that the federal court may consider, AEDPA still requires the court to show significant deference to the state court's decision. If the state court has adjudicated a given claim on the merits, a federal court may grant habeas relief only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)–(2). And as to the latter, a state court decision unreasonably applies federal law only when it is impossible for "fairminded jurists" to disagree that the state court decision conflicted with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011).

Third, AEDPA limits the materials a federal court may consult when determining whether the state court decision was unreasonable—both as to facts and law. As to facts, a federal court may not hold an evidentiary hearing unless a habeas claim relies on "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A), or the factual record shows the petitioner is actually innocent, *id.* § 2254(e)(2)(B). Absent any evidentiary hearing, the federal court's review is limited to the "record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). As for the law, as noted above, AEDPA allows a federal court to grant relief only if the state court unreasonably applied federal law, "*as determined by the Supreme Court of the United States.*" 28 U.S.C. § 2254(d)(1) (emphasis added). In other words, lower federal court precedent, even if a state court misapplied—or even contradicted—it, cannot serve as a ground for habeas relief. *Kernan v. Cuero*, 583 U.S. 1, 8 (2017). And even when a petitioner invokes Supreme Court precedent, mere dicta, or even holdings framed at a "high level of generality," do not qualify as clearly established federal law for AEDPA purposes and therefore cannot justify habeas relief. *Brown v. Davenport*, 596 U.S. 118, 136 (2022).

## LAW AND ANALYSIS

The Magistrate Judge addressed both Wilds' exhausted IAC claim and his request for a stay, in that order. The Court will touch on both, although it elects to do so in reverse order, as deciding to grant Wilds a stay would preempt the need to reach

the merits of his exhausted ground for error. *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020) ("The exhaustion doctrine is not a jurisdictional matter, but it is a threshold question that must be resolved before the court reaches the merits of any claim." (cleaned up)). As noted above, under AEDPA, a habeas petitioner must exhaust all his "constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Even if a petitioner fails to exhaust his bases for habeas relief, AEDPA permits a court to "elect [instead] to deny relief [for the unexhausted claims] on [the] merits." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012) (citing 28 U.S.C. § 2254(b)(2)). That said, courts must also remain mindful of the comity principles at play in § 2254 habeas proceedings. These principles require federal courts to accord state courts' adjudication of criminal matters due respect. As a result, federal courts are not to overlook a failure to exhaust with few exceptions. *Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and [to] prevent disruption of state judicial proceedings."). And that is particularly so when the petitioner did not present the grounds of error to *any* state court. *See Davila*, 582 U.S. at 527–28.

With that in mind, the Court turns to the issues here.

## A. Request to Stay and to Hold in Abeyance

Up first is Wilds' request for the Court to grant him a stay to exhaust certain claims—a request he raises for the first time in his traverse. (Doc. 15, #194). As noted, the R&R recommended denying this request on the grounds that the Petition

contained only one—and in the Magistrate Judge's view, exhausted—claim. (Doc. 16, #213). The R&R's conclusion that the Petition raised only one ground for review, while understandable given that Wilds himself styled his petition as presenting only one ground, (Doc. 1-3, #7), was in error. That is so in two ways.

First, as the Court recounted above, in addition to his previously presented IAC claim, Wilds asserted that his Confrontation Clause rights were violated because the informant never testified at his trial. (Doc. 1-3, #16). As an analytical matter, that ground for relief is necessarily distinct from his IAC claim based on his counsel's failure to move to suppress evidence obtained from the traffic stop—each contention relies on a distinct constitutional right. *Cf. Picard v. Connor*, 404 U.S. 270, 278 (1971) ("The claim that an indictment is invalid [possibly raised under the Fifth Amendment] is not the substantial equivalent of a claim that it results in an unconstitutional discrimination [in violation of the Equal Protection Clause]."). As a result, Wilds' argument based on the Confrontation Clause raises a distinct legal claim not raised previously in his state court proceedings.[4] (Doc. 13, #94); *Wilds*, 2021-Ohio-2554, at ¶ 1; *see supra* note 3. And its inclusion in his Petition suffices to render the Petition "mixed": it raises a claim that was properly presented for state-court review and others that were not.

---

[4] Admittedly, Wilds referenced his Confrontation Clause rights in his pro se memorandum in support of jurisdiction filed with the Ohio Supreme Court. (Doc. 13, #132). But that was the first time Wilds raised this issue in his direct appeal. And "the submission of a new claim to a State's highest court on discretionary review" does not constitute "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). So Wilds' Confrontation Clause claim is unexhausted. *Hall v. Huffman*, 234 F.3d 1268, 2000 WL 1562821, at *3 (6th Cir. 2000) (table).

Second, this same result follows even as to Wilds' three additional assertions (albeit at the end of his Petition) as to why his trial counsel was ineffective: counsel's failure to subpoena an informant, his failure to seek the dash camera footage from Lewis's vehicle, and his failure to request the state perform a DNA test on the peanut butter jar recovered during the traffic stop. (Doc. 1-3, #16). Though these alleged deficiencies fall under the same "ineffective assistance of trial counsel" umbrella as the claim he presented on direct appeal in the state court, that does not automatically mean they are just new reasons supporting that same IAC claim (directed at his counsel's failure to move to suppress the traffic stop). Rather, the Court must decide whether that is in fact so (i.e., that the new contentions are part of the same claim), or if instead the grounds raised are sufficiently different that what results is an entirely new IAC claim—even though pressed under the same label. If the latter, then the Court must treat that new IAC claim as unexhausted (and perhaps procedurally defaulted (more on that below)) based on the petitioner's failure to raise it during the applicable state court proceedings.

Unfortunately, the caselaw directed at parsing the distinction between bolstering arguments for existing claims, on the one hand, and new claims in habeas, on the other, has not fully defined the contours between the two. That said, the *reason* that a petitioner's use of the same label for a claim in habeas does not dispose of the question whether a petitioner has presented that same claim in the state courts is clear: "a general appeal to a constitutional guarantee … [like] due process … [does not] present the 'substance' of [] a claim to a state court." *Gray v. Netherland*, 518

11

U.S. 152, 163 (1996). Rather, claims (even those falling under single categorical umbrella) are distinct from one another if the "manner" in which a given constitutional guarantee was allegedly violated based on the petitioner's proffered contention results in "particular analyses" of that constitutional right that are unique to that contention. *Id.* at 163–64 (cleaned up). And from that it follows that a habeas petitioner raises a new and different claim in habeas (and thus must separately exhaust that claim) when he pursues arguments that are "analytically distinct" (even if related by the general label such as counsel's ineffectiveness) to those he presented to the state court. *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (explaining that "where [the] difference between two similar claims is [a] difference in legal theory, exhaustion of one claim is not sufficient to find exhaustion of other claim").

How does that play out here? The Court notes that it has not found cases expressly defining a per se rule for how to distinguish between different supporting arguments, on the one hand, and different claims, on the other, when it comes to IAC claims. But a review of the cases analyzing such claims reveals a clear analytical dividing line that applies on the facts here. In particular, courts treat arguments related to counsel's failure *to suppress* evidence (like what Wilds raised in the state court proceedings) as analytically distinct from arguments tied to counsel's failure to *obtain* evidence (and to present that additional evidence) favorable to a defendant's case (like Wilds' three new contentions regarding his counsel's failure to subpoena the informant, or to obtain Lewis's dash camera or DNA testing). Indeed, treating those as analytically distinct necessarily follows from the nature of the actions (or

12

more accurately, inactions) challenged. Suppression deals with *exclusion* of evidence that is already in the record as a result of the state's investigation of the alleged crime, whereas challenges to counsel's investigation and presentation of additional evidence turn on questions relating to additional evidence not yet in the record. *See Mason v. Rivard*, No. 2:13-cv-12126, 2020 WL 7024880, at \*17–\*18 (E.D. Mich. Nov. 30, 2020) (adjudicating a habeas petition that challenged both trial counsel's failure to investigate evidence to present in petitioner's defense and counsel's failure to suppress evidence the state sought to introduce at trial and relying on distinct analyses for each claim). As an analytical matter, the former requires an inquiry into the strength of the legal argument counsel could put forward in support of suppressing evidence. *Koras v. Robinson*, 123 F. App'x 207, 212 (6th Cir. 2005). The latter, by contrast, demands an inquiry into whether a reasonable attorney would be aware of (and could have obtained) the additional evidence. *Sowell v. Collins*, 557 F. Supp. 2d 843, 883 (S.D. Ohio 2008). In short, they are distinct analytical inquiries particular to the nature of each assertion, which renders them new claims for review. *Gray*, 518 U.S. at 162–65; *accord White*, 431 F.3d at 526.

For this reason, the R&R also clearly erred in treating Wilds' new assertions about trial counsel's investigative failures as arguments he made to support his position that his trial counsel should have moved to suppress the traffic stop. (Doc. 16, #209). Contrary to the R&R's characterization, Wilds' Petition, as written, is concerned with his counsel's *failure to obtain evidence* related to the informant, Lewis's dash camera, and DNA on the peanut butter jar. (*See* Doc. 1-3, #16). It is true

13

that had Wilds' counsel subpoenaed the informant or obtained the dash camera footage, he could have obtained evidence related to the merits of a potential motion to suppress—they both relate in part to the traffic stop itself. But, as noted, that two claims are related is not the touchstone of the analysis into whether distinct claims are raised. *White*, 431 F.3d at 526. And the pre-trial exclusion of evidence via a suppression motion is categorically distinct from the trial-oriented decisions about what evidence counsel should obtain and proffer in support of his client's defense. For this reason, Wilds' newly raised assertions about trial counsel's delinquencies in obtaining the requested evidence are best read as raising distinct claims, rather than arguments in support of his exhausted motion-to-suppress claim. They call for analytically distinct legal inquiries—the hallmark of having raised separate claims.

Accordingly, construing Wilds' Petition liberally, those additional paragraphs found at the end of his Petition (referring to counsel's failure to obtain evidence in his defense) also suffice to raise an additional IAC claim. (Doc. 1-3, #16). And because the claim is newly raised, it was never fairly presented to the state courts: the only ground raised in Wilds' direct appeal involved his trial counsel's failure to move to suppress, (Doc. 13, #94); *Wilds*, 2021-Ohio-2554, at ¶ 1, and Wilds never sought post-conviction review. (*See* Doc. 13, #166–68). So even this new IAC claim renders his Petition mixed.

But even though the R&R misstepped in concluding that the Petition raised only one ground for relief, the R&R did not otherwise err in concluding that a stay is not warranted here. (Doc. 16, #213). As the R&R explained, the request to stay

14

proceedings to permit a habeas petitioner to exhaust his unexhausted claims "should be available only in limited circumstances." (Doc. 16, #212 (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005))). In other words, the Court can in its discretion deny a request for a stay if the petitioner does not show "good cause" for failing to exhaust, if his claims are "plainly meritless," (*id.* (quoting *Rhines*, 544 U.S. at 277–78)), or if the claims are procedurally defaulted, *Cole v. Warden, Lebanon Corr. Inst.*, No. 2:14-cv-578, 2016 WL 2961739, at *1 (S.D. Ohio May 23, 2016).

The Court sees no error, let alone clear error, in the R&R's conclusion that a stay would be inappropriate here given Wilds has made no showing as to the cause of his failure to exhaust his claims. (Doc. 16, #213). He merely lists the claims in his Petition, (Doc. 1-3, #16), and requests a stay without supplying any justification for that request, (Doc. 15, #194). That dearth of an explanation dooms his request as it provides the Court no basis to understand *why* he did not resolve his claims in the state court system. Moreover, the claims relate to details about the evidence admitted at trial and actions his counsel did not take to counter the government's case: he believes the informant should have been called to testify, Lewis's dash camera should have been produced at trial, and that DNA should have been taken from the peanut butter jar. (Doc. 1-3, #16). So once both sides closed their case, Wilds would have known that his counsel did not proffer such evidence and would have been aware of the bases for other potential IAC claims. Yes, to prove prejudice, Wilds would need to explain what such evidence would have proved. *See supra* note 2. But given the record does not explain Wilds' failure to exhaust, that he would have known at the close of

15

trial that these claims might need to be raised confirms the conclusion that Wilds lacks cause justifying his failure to exhaust. Besides, as explored next, these newly raised grounds for relief (the Confrontation Clause claim and additional IAC claim) are procedurally defaulted. And that means issuing a stay to permit exhaustion would be a futile act. *Cole*, 2016 WL 2961739, at *1. In light of the multiple clear reasons counseling against a stay, the Court adopts the R&R's conclusion that a stay is unwarranted.

Considering no stay will issue, the question then becomes what to do about these unexhausted claims. *McBride v. Skipper*, 76 F.4th 509, 514 (6th Cir. 2023) (listing the Court's alternatives). The Court concludes that it is proper to resolve them in this proceeding by dismissing them with prejudice because they are procedurally defaulted. To see why this follows, the Court first explains the distinction between the two bars to habeas relief. Exhaustion refers to the failure of a federal habeas petitioner to exhaust state court remedies that are available at the time he filed his federal petition. *Williams*, 460 F.3d at 806. Procedural default kicks in, however, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim." *Id.* So, in a sense, if a habeas petitioner fails to raise his claims in state court *and* waits too long to file his federal habeas petition, his failure to exhaust effectively constitutes a procedural default.

As noted, Wilds' new claims—the trial-related assertions about the alleged ineffective assistance of trial counsel and his Confrontation Clause claim—were never fairly presented in state court. But to determine whether they are procedurally

16

defaulted, the Court must ascertain whether Ohio's procedural rules would allow him to do so now. *Id.*

Start with the Confrontation Clause claim. That claim had to be raised on direct review. *See supra* note 3. So, unless Wilds could reopen that appeal, which concluded on November 24, 2021, when the Ohio Supreme Court declined to accept jurisdiction over his appeal, (Doc. 13, #163), this claim will be deemed procedurally defaulted. In Ohio, the mechanism for criminal defendants to reopen their direct appeals is Ohio Rule of Appellate Procedure 26(B). But it permits a defendant to reopen the proceedings only to raise ineffective-assistance-of-*appellate*-counsel claims—not to raise new substantive bases for the claims litigated on direct appeal. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012); *accord Williams*, 460 F.3d at 806. Because Wilds does not have an avenue to reopen his direct appeal, an Ohio procedural rule—specifically res judicata—now bars Wilds from presenting his Confrontation Clause claim in state court. Moreover, that procedural bar serves as an adequate and independent ground for denying relief, which constitutes sufficient grounds upon which this Court may dismiss Wilds' claims. *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 829–30 (6th Cir. 2019) (holding that Ohio's res judicata rule is an adequate and independent basis for denying habeas relief on procedural default grounds).

What about the newly-raised trial-related contentions about trial counsel's purported ineffective assistance? Those had to be raised in postconviction review proceedings. *See supra* note 2. Under Ohio law, the deadline for Wilds to initiate state

postconviction proceedings expired in January 2021. Ohio Rev. Code § 2953.21(A)(2)
(requiring postconviction proceedings be initiated within one year of the filing of the
trial record in the applicable court of appeals); (Doc. 13, #171 (noting the record was
filed in the court of appeals on January 29, 2020)). Unlike with respect to attempts
to raise untimely claims on direct appeal, though, Ohio law permits untimely
postconviction petitions under Ohio Revised Code § 2953.23(A). But to overcome the
untimeliness, Wilds would need to show that he "was unavoidably prevented from
discovery of the facts" serving as the basis for the claims for relief. Ohio Rev. Code
§ 2953.23(A)(1)(a).

Here, as the Court already explained, it agrees with the R&R that Wilds does
not merit a stay of the federal habeas proceedings in part because the core factual
predicate for the claimed deficient performance of trial counsel would have been
evident at the close of trial. In other words, Wilds would have known about the
underlying bases for the newly raised assertions about the allegedly ineffective
assistance of trial counsel before he filed his direct appeal. Again, Wilds would
ultimately need to proffer additional evidence outside the trial record to succeed on
such claims. But given he was counseled during his direct appeal and given his
knowledge about what actions his trial counsel failed to take, Wilds could not show
that he was "unavoidably prevented" from discovering the facts undergirding his
additional claims about the ineffective assistance of trial counsel, a showing he would
need to make to excuse an untimely post-conviction petition. *State v. Pianowski*,
2013-Ohio-2764, ¶¶ 17–21 (2d Dist.) (defining "unavoidably prevented" as a

defendant's lack of knowledge and inability to obtain knowledge of the relevant facts through the exercise of reasonable diligence). Because the state court avenues for post-conviction review are therefore now closed to Wilds on procedural grounds (timeliness), his new contentions regarding the ineffective assistance of trial counsel are properly considered procedurally defaulted. *See Mammone v. Jenkins*, 49 F.4th 1026, 1047 (6th Cir. 2022) (finding an unraised claim procedurally defaulted because it would not satisfy Ohio Revised Code § 2953.23(A)(1)(a)).

Accordingly, Wilds procedurally defaulted all these newly raised claims. A federal habeas court may review the merits of a procedurally defaulted claim if "the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams*, 460 F.3d at 805–06. Without belaboring the point, the Court reiterates its agreement with the R&R that Wilds has not explained his failure to raise his habeas claims in state court. (Doc. 13, #213). That omission suffices to bar this Court's review. *Williams*, 460 F.3d at 807. So these late-raised claims (the Confrontation Clause and newly-raised trial-related assertions regarding trial counsel's alleged ineffective assistance, (Doc. 1-3, #16)) must be denied with prejudice.[5]

---

[5] As noted, Wilds' traverse vaguely alludes to *Brady v. Maryland* and his Sixth Amendment right to call unnamed witnesses, (Doc. 15, #194), which implies he might have two other potential claims. Given Wilds provides sparse detail about such claims and their mention comes in what is in effect a reply brief, the Court declines to treat such vague references as his raising additional claims in this habeas proceeding. *Cf. SAT Tech., Inc. v. CECO Env't Corp.*, No. 1:18-cv-907, 2023 WL 6119934, at *3 n.7 (S.D. Ohio Sept. 19, 2023) (stating the general rule that issues raised for the first time in a reply brief are not properly before the court). Accordingly, the Court's ruling today applies only to those claims properly alleged in his Petition—the Confrontation Clause claim, the procedurally defaulted contentions

**B.    Merits of the Exhausted IAC Claim**

That leaves Wilds' sole exhausted claim for relief: that his trial counsel was ineffective by failing to move to suppress the evidence acquired during the traffic stop before trial. (Doc. 1-3, #7). The Fourth District addressed this claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded that Wilds' trial counsel did not provide ineffective assistance. *Wilds*, 2021-Ohio-2554, at ¶¶ 13–20. In reaching that conclusion, the Fourth District addressed two arguments why Wilds believed his counsel should have moved to suppress (the same two arguments Wilds makes now): that police lacked reasonable articulable suspicion to stop Wilds' vehicle for having crossed the center line and that his counsel's failure to challenge the basis for the stop via pretrial motions practice prejudiced his defense. (*Compare* Doc. 1-3, #4, *with* Doc. 13, #94).

The Fourth District concluded, as to the first, that courts in Ohio have consistently found that police may constitutionally stop vehicles that cross the centerline because it violates Ohio Revised Code § 4511.25(A). *Wilds*, 2021-Ohio-2554, at ¶ 18. And it explained that the single case Wilds cited to support his argument held only that police lacked reasonable articulable suspicion to stop a vehicle for a marked lane violation (governed by a different code provision) when the vehicle touched (rather than crossed) the fog line—the white line that demarcates the right side of the roadway. *Id.* ¶ 17 ("Unlike in [*State v.*] *Turner*, [170 N.E.3d 421 (Ohio 2020),] which is limited to a marked lane violation under [Ohio Revised Code

_____

regarding trial counsel's alleged ineffective assistance, and the exhausted IAC claim addressed in the next section, *see infra* Part B. (Doc. 1-3, #4, 7, 16).

§] 4511.33(A)(1) pertaining to driving on or touching the fog line, the traffic stop herein occurred because Wilds drove left of center."). Given those legal distinctions, the Fourth District concluded that the trial court would not have suppressed Wilds' traffic stop, even considering the holding in *Turner*. *Id.* ¶¶ 17, 20.

And as to the second argument—that Wilds' counsel's decision to contest the traffic stop at trial, rather than via a motion to suppress—constituted deficient performance, the Fourth District concluded Wilds' claim lacked merit as "there is no reasonable probability that a motion to suppress would have succeeded." *Id.* ¶ 20. It held that Wilds alternate theory that even if he had violated the traffic laws, the stop should have been suppressed on the grounds that the officers "fabricated a traffic stop" lacked support in the record. *Id.* ¶ 19 (cleaned up). It concluded that Akers' testimony that he observed the traffic infraction sufficed to support the decision to execute the stop. *Id.* And it underscored that although Akers' vehicle lacked a dash camera, that fact did not raise the specter that Akers and Lewis lied about the basis for the stop—Lewis's testimony at trial explained that Akers' involvement in bringing about the stop resulted from his being "new to interdiction and want[ing] the experience." *Id.* As the Fourth District summarized, "[a]side from Wilds' speculation, there is simply no evidence that Akers and Lewis conspired to have Akers follow Wilds because it would be easier for him to 'fabricate' a traffic stop." *Id.*

After reviewing this decision and the applicable caselaw, the R&R concluded that the Fourth District reasonably applied binding Supreme Court precedent (i.e., *Strickland*). (Doc. 16, #206–10). The Court sees no clear error in this assessment.

21

Wilds' trial counsel's performance did not "f[a]ll below an objective level of reasonable representation" by failing to move to suppress the traffic stop under *Turner*, the case on which Wilds relies to challenge the constitutionality of the traffic stop. *Strickland*, 466 U.S. at 687. Given the clear distinguishing factors between Wilds' traffic violation and the alleged violation in *Turner* and that Ohio caselaw has consistently held that police may constitutionally stop vehicles that cross the center line, a motion to suppress relying on *Turner* would not have been reasonably likely to succeed. (Doc. 16, #208–09 (reviewing this caselaw)). And the R&R did not clearly err in concluding that the Fourth District properly rejected Wilds' argument that the state court would have suppressed the traffic stop based his theory of a fabricated basis for the stop. (*Id.* at #209). Simply, Wilds' argument depends on pure speculation, rather than evidence. So any motion to suppress relying on that basis would not have had a reasonable prospect for success. *Wilds*, 2021-Ohio-2554, at ¶ 19; (*Id.* (citing *Koras*, 123 F. App'x at 212 ("Where one is left with pure speculation on whether the outcome of the trial could have been any different, there is an insufficient showing of prejudice." (cleaned up)))). For those reasons, the R&R is correct to observe that Wilds suffered no prejudice from his trial counsel's failure to move to suppress the traffic stop based on either argument raised. (Doc. 16, #209). And that means the R&R did not clearly err in concluding the Fourth District's ruling in Wilds' direct appeal did not contravene or unreasonably apply binding Supreme Court caselaw when rejecting Wilds' IAC claim. (*Id.* at #210).

So the Court adopts the R&R's recommendation that it reject Wilds' exhausted IAC claim as meritless.

## CONCLUSION

For the reasons stated above, the Court agrees with almost all of the R&R's reasoning and accordingly **ADOPTS** its ultimate recommendations (Doc. 16). So the Court **DENIES** Wilds' request in his traverse for a stay and abeyance (Doc. 15) and **DENIES** his Petition (Doc. 1) **WITH PREJUDICE**. The Court also **DENIES** Wilds a certificate of appealability under 28 U.S.C. § 2253(c).[6]

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

August 15, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[6] Because the Court finds that the heart of the R&R's analysis and its ultimate conclusions are not clearly erroneous—the only error was an oversight regarding Wilds' unexhausted claims—the Court concludes that "jurists of reason would [not] find it debatable" that Wilds' Petition is constitutionally meritless. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For that reason, he is not entitled to a certificate of appealability under 28 U.S.C. § 2253(c).